IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 5, 2024 Session

## MICHAEL DINOVO, JR. ET AL. V. KENNETH BINKLEY ET AL.

**Appeal from the Circuit Court for Davidson County
No. 16C121   Amanda Jane McClendon, Judge**

_____

**No. M2023-00345-COA-R3-CV**

_____

The Appellant previously entered into a workers' compensation settlement agreement with the Appellee herein, Southern Energy Company, Inc., following serious injuries he received in an incident that had occurred at the latter's biodiesel plant. Years later, the Appellant also attempted to recover against the Appellee in tort for the incident in the Davidson County Circuit Court. After the Circuit Court granted summary judgment in favor of the Appellee, the Appellant appealed to this Court. For the reasons stated herein, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which ANDY D. BENNETT, J., joined. JEFFREY USMAN, J., filed a separate dissenting opinion.

Tony Seaton and Thomas J. Smith, Johnson City, Tennessee, for the appellant, Michael DiNovo, Jr.

Clint J. Woodfin, Knoxville, Tennessee, and Lance W. Thompson and Allison Wiseman Acker, Nashville, Tennessee, for the appellee, Southern Energy Company.

## OPINION

### BACKGROUND

The Appellee Southern Energy Company, Inc. ("Southern Energy"), is an oil company located in Shelbyville, Tennessee, that owns the gasoline and diesel equipment for several convenience stores. Sometime in the spring of 2012, Southern Energy's owner and President, Gary King ("Mr. King"), became interested in manufacturing and selling

biodiesel fuel. Mr. King hired Jim Carter to build a biodiesel plant for the company. Mr. Carter worked at Southern Energy for approximately one year before suddenly leaving without notice. The Appellant herein, Michael DiNovo, Jr. ("Mr. DiNovo"), began working for Southern Energy in the summer of 2013, taking over the biodiesel production. Although at that time it was initially understood by Mr. DiNovo and Mr. King that Mr. DiNovo was performing work as an independent contractor, Southern Energy maintains that Mr. DiNovo was later converted to an employee.[1]

On November 18, 2013, an explosion occurred at Southern Energy's biodiesel plant that resulted in Mr. DiNovo suffering burns to over 50% of his body. Mr. DiNovo's family subsequently retained attorney Edward North ("Attorney North") to handle a workers' compensation claim in relation to the matter, and in February 2014, Attorney North filed a Request for Benefit Review Conference on Mr. DiNovo's behalf. Later, on February 12, 2016, Attorney North filed a Form SD1 for Mr. DiNovo, and on the same date, Mr. DiNovo signed and entered into a Workers' Compensation Settlement Agreement ("WC Settlement") with Southern Energy.

The WC Settlement identified Mr. DiNovo as "Employee" and Southern Energy as "Employer," and it recited that "the Parties have entered into this voluntary settlement of all matters in issue under the terms and conditions hereinafter set forth, with full knowledge of their rights and responsibilities, including the right of any party to be represented by an attorney of such party's choice, all of which the Parties hereto acknowledge by their signatures." The WC Settlement further recited that, "[o]n or about November 18, 2013, Employee was employed by Employer and engaged in activity arising out of and in the course and scope of employment, when he was involved in an explosion and fire resulting in injury to multiple parts of his body." Regarding benefits and expenses, the WC Settlement noted that Mr. DiNovo had received over $41,000.00 in temporary total disability benefits, stated that he was entitled to permanent partial disability benefits in the total amount of $300,000.00, and outlined that he had incurred authorized medical expenses in the amount of "$703,721.06, all of which have been or will be paid by Employer." Mr. DiNovo's claim for workers' compensation was approved by the Tennessee Department of Labor and Workforce Development Division of Workers' Compensation Benefit Review Section, and there is no dispute in this litigation as to whether the WC Settlement itself constitutes a judgment.[2]

Outside of the WC Settlement, Mr. DiNovo also sought recovery in relation to the November 18, 2013, explosion by filing a lawsuit in tort in the Davidson County Circuit

---

[1] As to this issue of his employment, Mr. DiNovo's federal tax return for the 2013 tax year referenced Southern Energy as an "Employer" on a wage schedule.

[2] Regarding this subject, we note that when the Tennessee Department of Labor and Workforce Development Division of Workers' Compensation Benefit Review Section approved the WC Settlement, the approval recited that "[t]his Approval shall be entitled to the same standing as a judgment entered by a Court of record for purposes of T.C.A. § 50-6-230 and all other purposes."

Court ("the trial court"). Although the broader litigation in the trial court concerned an attempt by Mr. DiNovo to recover against multiple parties, the present appeal is directly concerned with Mr. DiNovo's efforts at recovering against Southern Energy. Of note—and notwithstanding his entry into the WC Settlement—Mr. DiNovo alleged in an amended complaint that he was entitled to both compensatory and punitive damages against Southern Energy. Mr. DiNovo alleged in his pleading that, throughout the time he had provided services for Southern Energy, he had understood himself to be an independent contractor.

In response to the lawsuit against it, Southern Energy contended that Mr. DiNovo could not recover because he had already received a workers' compensation settlement. In filing a motion seeking summary judgment, Southern Energy specifically highlighted Mr. DiNovo's prior representations incident to the WC Settlement, i.e., that he had been an employee of Southern Energy and that he had been acting in the course and scope of his employment when he was involved in the accident resulting in his injury. Southern Energy maintained that Mr. DiNovo was barred from denying otherwise within the trial court litigation, and in a supporting memorandum of law, it argued that the WC Settlement was Mr. DiNovo's exclusive remedy, stating that "he cannot now pursue tort claims to double-dip recovery from Southern." The trial court ultimately agreed with Southern Energy that summary judgment was appropriate and held that several estoppel doctrines, including judicial estoppel and collateral estoppel, barred Mr. DiNovo's pursuit of relief.

Of note, in connection with its entry of summary judgment in Southern Energy's favor, the trial court acknowledged an argument lodged by Mr. DiNovo that "Southern devised and orchestrated a fraudulent scheme to avoid liability for his injuries when it entered into a workers' compensation settlement with him while knowing he was an independent contractor." Confronting this argument, however, the trial court stated that Mr. DiNovo had offered "no evidence" to support such a claim.

Mr. DiNovo thereafter filed a motion to alter or amend the judgment and argued in an accompanying memorandum of law that he sought to "reset the focus," stating that he had only previously addressed the "narrow issue of the workers' compensation settlement." According to Mr. DiNovo, his focus should have been on the alleged misrepresentation by Southern Energy, and he submitted that purported fraud by Southern Energy made its various summary judgment arguments "irrelevant."

Southern Energy opposed Mr. DiNovo's motion to alter or amend and offered various reasons as to why relief in his favor was improper. Among other things, Southern Energy contended that the trial court had already rejected Mr. DiNovo's theories of fraud on the basis that he had offered "no evidence." Further, Southern Energy argued that Mr. DiNovo's complaint did not even state an actual cause of action against it for misrepresentation.

When the trial court entered an order on Mr. DiNovo's motion to alter or amend, it initially stated that "resetting the focus is not one of the purposes of a Rule 59 motion." Further, though, the trial court noted that Mr. DiNovo had previously injected a fraud issue into the case and that it had, as argued by Southern Energy, already rejected it. The trial court reiterated that Mr. DiNovo had offered "no evidence" of the alleged fraudulent scheme and had failed to show the existence of disputed material facts. Thus, the trial court declined to alter or amend its previous judgment. This appeal followed.

## STANDARD OF REVIEW

At issue in this appeal is the trial court's grant of summary judgment. "Because the resolution of a motion for summary judgment is a matter of law, we review the trial court's judgment de novo with no presumption of correctness." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008).

## DISCUSSION

Through their appellate briefs in this matter, both sides acknowledge the general legal premise that "workers' compensation law provides the exclusive remedy for an employee who is injured during the course and scope of his employment, meaning the employee is precluded from seeking tort damages for the injury." *Valencia v. Freeland & Lemm Constr. Co.*, 108 S.W.3d 239, 242 (Tenn. 2003).[3] Mr. DiNovo, however, maintains that the WC Settlement should not serve as a barrier to his recovery in tort because, according to him, he was an independent contractor at the time of the November 18, 2013, explosion, not an employee of Southern Energy. As framed at the opening of his "Statement of the Case" in his principal appellate brief, he posits that "[t]his is a case about fraud . . . ." In general, his position appears to be that a fraud—pertaining to his status as an employee—was perpetrated upon him in connection with his entry into the WC Settlement, thus permitting him to pursue the present legal action for tort damages.

According to Mr. DiNovo, there are genuine issues of material fact pertaining to a claim for intentional misrepresentation related to this subject, thereby necessitating a reversal of the grant of summary judgment. In the same vein, whereas the trial court specifically relied upon various estoppel doctrines to justify a grant of summary judgment in Southern Energy's favor, Mr. DiNovo's raised issue devoted to challenging that part of the trial court's ruling is linked singularly to the supposed fraud that he claims occurred. In pertinent part, he specifically states that "[t]his Court should reverse the trial court's granting of summary judgment as the . . . claims are not barred by the estoppel doctrines because the workers compensation agreement was the product of fraud." Clearly, the

---

[3] Whereas Southern Energy itself directly cites to the *Valencia* decision in its brief, Mr. DiNovo's principal appellate brief remarks that "Tennessee's Workers' Compensation Law . . . is the exclusive statutory remedy for employees."

notion of fraud is at the heart of Mr. DiNovo's position as to why the trial court's grant of summary judgment should be overturned.

According to Southern Energy, a cause of action for misrepresentation was not even pled against it, much less pled with sufficient particularity as required by Tennessee law. Regardless, though, Southern Energy acknowledges that the trial court did consider Mr. DiNovo's contention that there was a fraudulent scheme incident to the WC Settlement, only to reject it on the basis that he had "no evidence to support this claim." It is to that ruling that we now shift our attention, as Mr. DiNovo's failure to properly challenge it through his briefing is dispositive of this appeal.

Although Mr. DiNovo submits that there are genuine issues of material fact regarding his assertions of fraud, we conclude that he has failed to properly support this contention in the argument section of his brief. Indeed, within the section of his argument devoted to explaining why he supposedly has a viable claim for misrepresentation and why there are genuine issues of material fact regarding same, Mr. DiNovo fails to provide any citations to the record. In so failing, he also of course fails to properly demonstrate any impropriety regarding the trial court's conclusion that he had "no evidence" to support his fraud theory.[4] Based on Mr. DiNovo's failure to provide citations to the record within the section of his argument regarding the supposed viability of his fraud theory and a claim for misrepresentation, he has waived any issue regarding same. *See, e.g.*, *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record . . . in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue."). In turn, because the purported existence of fraud in this case is at the heart of Mr. DiNovo's position on why the trial court's grant of summary judgment (and its specific reliance on various estoppel doctrines) should be overturned, his waiver to this end is fatal to his attempted vindication of the remedies he believes should be available to him.

## CONCLUSION

In light of the foregoing discussion, the trial court's grant of summary judgment in favor of Southern Energy is affirmed, and the case is remanded for further proceedings that are consistent with this Opinion.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE

---

[4] Although we do not intend to suggest that more thorough efforts in his reply brief would have cured the deficiency, *see Ingram v. Ingram*, No. W2017-00640-COA-R3-CV, 2018 WL 2749633, at *11 n.4 (Tenn. Ct. App. June 7, 2018) ("Reply briefs . . . are not vehicles to correct deficiencies in initial briefs."), we note that Mr. DiNovo's reply brief does not marshal citations to the record when specifically discussing this issue and the trial court's ruling about "no evidence."